**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **DAVID SNODGRASS, Individually and on Behalf of All Other Persons Similarly Situated,**<br><br>        **Plaintiffs,**<br><br>       v.<br><br>**BOB EVANS FARMS, LLC,**<br><br>        **Defendant.** | **Case No. 2:12-cv-768**<br><br>**Judge Peter C. Economus**<br><br>**Magistrate Judge Norah McCann King**<br><br>**MEMORANDUM OPINION AND ORDER** |

Presently pending before the Court are the Plaintiffs' Motion for Conditional Certification (Doc. 45) and the Defendants' motion to strike (Doc. 49). For the reasons that follow, the motion to strike is **DENIED** and the motion for conditional certification is **GRANTED**.

**I.**

This is a collective action brought pursuant to the provisions of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"). Named Plaintiff David Snodgrass ("Snodgrass"),[1] on behalf of himself and others similarly situated, claims that Defendant Bob Evans Farms, LLC ("Bob Evans")[2] failed to pay him overtime wages as required by the FLSA while he was employed by Bob Evans as an assistant restaurant manager. Snodgrass is joined in this action by opt-in Plaintiffs Amanda Kirchner, Keith Sutton, Barbara Gibbs, Brent Neff, Jennifer Britt, Jennifer Curtis, Brett Kubin, Clifford Britton, Annquance Williams, and Jackie

---

[1] By Opinion and Order dated June 6, 2013, the Court allowed Snodgrass to substitute as lead plaintiff for Dallas Thorn, whose claims the Court concurrently dismissed with prejudice. (*See* Doc. 62.)

[2] For purposes of this Opinion and Order and the collective class conditionally certified herein, the terms "Bob Evans Farms, LLC" and "Bob Evans" should be interpreted to include Bob Evans Farms, LLC's predecessor entity Bob Evans Farms, Inc.

Franklin.[3]  The Parties have engaged in preliminary discovery and the issue of conditional certification is now ripe for the Court's decision.

## II.

Prior to considering the Plaintiffs' motion for conditional certification, the Court briefly discusses Bob Evans' motion to strike that motion.  According to Bob Evans, because the motion for conditional certification was filed after original lead Plaintiff Dallas Thorn had expressed her desire to withdraw from the case, her attorneys violated the Ohio Rules of Professional Conduct by filing the motion for conditional certification without her authority.  In Bob Evans' view, the motion should therefore be stricken.  The Court, however, is unpersuaded by Bob Evans' arguments and declines to strike the motion.  In this regard, the Court first notes that counsel for the Plaintiffs expressly filed the motion for conditional certification on behalf of Thorn and the opt-in Plaintiffs.  Opt-in employees are considered party plaintiffs, and, regardless of Thorn's status, the motion for conditional certification can be deemed validly filed on their behalf.  *See O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 583 (6th Cir. 2009).  Second, because the Court has already permitted Snodgrass to substitute for Thorn and the Plaintiffs' motion is not supported by Thorn's testimony, it would only create needless delay to strike the Plaintiffs' motion.

## III.

### A.

The Court now turns to the substance of the motion for conditional certification. Pursuant to the FLSA, covered employers are generally required to pay non-exempt employees the specified minimum, hourly wage and overtime wages at a rate of one and one half times the

---

[3] The claims of opt-in Plaintiffs Matthew Jones and Jerome Chapman have been dismissed via stipulation of the Parties.  (*See* Docs. 39 & 56.)

2

employees' normal hourly rates for hours worked in excess of forty in a given workweek. *See* 29 U.S.C. §§ 206(a) & 207(a)(1). Employees "employed in a bona fide executive, administrative, or professional capacity" are exempt from the FLSA's minimum wage and overtime requirements. *Id.* § 213.

Ultimately at issue in this case is whether Bob Evans properly classified Snodgrass and the opt-in Plaintiffs as exempt from the overtime requirements. The Department of Labor's regulations implementing the FLSA specify that job titles alone are not sufficient to determine whether an employee should be considered exempt; rather, the "exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations." 29 C.F.R. § 541.2. To qualify for an exemption, an employee's "primary duty" must be the performance of exempt work. *Id.* § 541.700(a). The employer bears the burden of proving that a given employee is exempt from the FLSA's overtime requirements. *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640, 642 (6th Cir. 2013).

To redress their rights under the FLSA, the Act allows employees to file civil actions to recover unpaid wages. *See* 29 U.S.C. § 216(b). Further, an employee or group of employees may file a so-called "collective action" "for and in behalf of himself or themselves and other employees similarly situated." *Id.* To join a collective action, similarly situated employees must affirmatively opt in to the action by filing written consents with the court overseeing the action. *Id.*

Here, Snodgrass and the Plaintiffs who have thus far opted to join the action have moved for conditional certification of a collective class of Bob Evans' assistant managers. In the Sixth Circuit, courts generally use a two-stage process in determining if opt-in plaintiffs are similarly

situated to the lead plaintiff. "District courts use a 'fairly lenient standard' that 'typically results in conditional certification of a representative class' when determining whether plaintiffs are similarly situated during the first stage of the class certification process." *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012) (quoting *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006)).

The burden of demonstrating that opt-in plaintiffs are similarly situated rests with the lead plaintiff. *O'Brien*, 575 F.3d at 584. However, the factual showing required of the lead plaintiff at the conditional certification stage is "modest"—"[t]he plaintiff must show only that his position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546–47 (quotation omitted). Opt-in plaintiffs have been deemed similarly situated in instances where "their claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585. "Showing a 'unified policy' of violations is not required." *Id.* at 584.

In the conditional phase of certification, the Court "does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Brasfield v. Source Broadband Servs., LLC*, 257 F.R.D. 641, 642 (W.D. Tenn. 2009). During the second phase of certification, which occurs after all opt-in notices have been received and discovery is complete, "trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated." *Comer*, 454 F.3d at 546–47.

**B.**

The Court will next discuss the record generated during discovery and its application of the above legal standards to that record. According to John Carothers, Bob Evans' vice president

of field human resources, between August 27, 2010 and the present, Bob Evans has employed approximately 2,503 assistant managers. Carothers Decl. ¶ 4, June 6, 2013. The purported job duties and functions of the assistant managers are governed by centralized policies created by Bob Evans' corporate management. For instance, Carothers testified that only one written job description exists for the assistant manager position companywide. *See* Carothers Dep. 36–37. He further testified that regardless of the state and the size of the restaurants where they work, all assistant managers nationwide are expected to manage Bob Evans' restaurants. *See id.* 35–36. All assistant managers are classified as exempt from overtime and none are paid overtime compensation. *Id.* 38. Relatedly, Bob Evans does not take variations between the actual duties of individual assistant managers into consideration in classifying them as exempt from overtime. *Id.* 42. Finally, the record indicates that Bob Evans' restaurants are operated according to policies and procedures that apply to all company restaurants nationwide. *See, e.g.,* Carney Dep. 21–28.

In the amended complaint, Snodgrass alleges that, despite Bob Evans' corporate expectation that assistant managers' primary duty is to manage restaurants, his specific primary duties did not differ substantially from those performed by non-exempt employees, and included tasks such as operating the cash register, preparing and cooking food, cleaning, and stocking supplies. (*See* Am. Compl. ¶¶ 34–36.) Snodgrass' allegations are generally corroborated by his deposition testimony. For instance, he testified that, while employed by Bob Evans as an assistant manager, he spent 75% to 80% of his time doing tasks, such as those mentioned in the amended complaint, that would likely be considered non-exempt. *See* Snodgrass Dep. 266–68. Snodgrass considered these tasks to be his primary duties. *Id.* 268. According to Snodgrass, he worked 50 to 55 hours per week. *Id.* 159.

In addition to Snodgrass' deposition testimony, the Plaintiffs also rely on the filed declarations of opt-ins Keith Sutton, Barbara Gibbs, Brent Neff, Jennifer Curtis, Brett Kubin, Annquance Williams, and Jackie Franklin.  As with Snodgrass, each of these Plaintiffs contends that they were employed as assistant managers for Bob Evans, worked on average more than forty hours per week, were not paid overtime, and, despite Bob Evans' job descriptions and policies for their positions, they spent significant amounts of time doing work that would likely be considered non-exempt.  *See* Williams Decl. ¶¶ 1–3; Kubin Decl. ¶¶ 1–3; Curtis Decl. ¶¶ 1–4; Gibbs Decl ¶¶ 2–5; Franklin Decl. ¶¶ 1–4;  Sutton Decl. ¶¶ 1–4; Neff Decl. ¶¶ 1–4.  The opt-in Plaintiffs also stated that they were aware of other assistant managers who performed similar job duties as their own.  *See, e.g.,* Williams Decl. ¶ 4; Sutton Decl. ¶ 4.

Based on the record before it, the Court concludes that Snodgrass has made the modest showing required at this stage of the litigation to demonstrate that he is similarly situated to the opt-in Plaintiffs and potentially other assistant managers working at Bob Evans' restaurants throughout the country.  In this regard, Snodgrass' individual claims as well as those of the opt-in Plaintiffs are unified by common theories of FLSA violations by Bob Evans—specifically, that the primary duty of at least a portion of the assistant managers working in Bob Evans' restaurants, whom are not paid overtime compensation despite regularly working more than forty hours per week, is the performance of non-exempt work.

Snodgrass testified that he spent large portions of his working time performing non-exempt tasks, and, while time spent performing exempt versus non-exempt work is not dispositive in determining an employee's primary duty, it is an important factor.  *See* 29 C.F.R. § 541.700(b). Likewise, the opt-in Plaintiffs who submitted declarations to the Court all stated that they spend substantial portions of their time performing non-exempt work.  Snodgrass is thus

similarly situated to those opt-ins. Significantly, the opt-ins also stated that they were aware of other assistant managers whose work involved similar percentages of non-exempt tasks. That, plus the fact that Bob Evans attempts to centralize and standardize restaurant operations throughout the country, suggests that other assistant managers may also be similarly situated and are thus deserving of notice of this lawsuit. Additionally, Snodgrass and the opt-ins represent a geographically diverse group of assistant managers, which further supports the conditional certification of a nationwide class.[4]

Bob Evans essentially argues that because "a fact-specific inquiry" into whether each particular assistant manager meets the FLSA's exemption standards is required, preliminary certification should be denied. (*See* Def.'s Mem. Opp'n at 2.) However, this very line of argumentation was rejected by the Sixth Circuit in *O'Brien*, wherein the Court stated that:

> … Both the district court and the defendant note that to determine whether a particular violation of the FLSA took place in this case requires an individualized analysis that examines the facts of each alleged violation. For this reason, the district court decertified, determining that individualized issues predominated.
>
> But such a collection of individualized analyses is required of the district court. Under the FLSA, opt-in plaintiffs only need to be "similarly situated." While Congress could have imported the more stringent criteria for class certification under Fed.R.Civ.P. 23, it has not done so in the FLSA. *See Grayson*, 79 F.3d at 1096 (section 216(b)'s "similarly situated" requirement is less stringent than Rule 20(a) requirement that claims "arise out of the same action or occurrence" for joinder to be proper, or even Rule 23(b)(3)'s requirement that common questions predominate for a 23(b)(3) class to be certified). The district court implicitly and improperly applied a Rule 23–type analysis when it reasoned that the plaintiffs were not similarly situated because individualized questions predominated. This is a more stringent standard than is statutorily required.

---

[4] Snodgrass, Barbara Gibbs, and Jennifer Curtis were employed in Bob Evans' restaurants at various locations in West Virginia. *See* Curtis Decl. ¶ 1; Gibbs Decl. ¶ 1; Snodgrass Dep. 21. Curtis also worked at two locations in Pennsylvania. *See* Curtis Decl. ¶ 1. Additionally, Annquance Williams worked at a location in Florida; Bret Kubin at locations in Michigan; Jackie Franklin and Keith Sutton at locations in Indiana; and Brent Neff worked at locations in Ohio. *See* Williams Decl. ¶ 1; Kubin Decl. ¶ 1; Franklin Decl. ¶ 1; Sutton Decl. ¶ 1; Neff Decl. ¶ 1.

*O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 584–85 (6th Cir. 2009) (some citations omitted). This Court notes that, in *O'Brien*, the discussion of whether the opt-in plaintiffs were similarly situated occurred in the context of the much more stringent second stage of the certification process.

The record contains the declarations of 64 so-called "happy camper" assistant managers, each averring that they spend the majority of their time managing the activities of subordinate employees as opposed to performing non-exempt, category work. (*See* Def.'s Mem. Opp'n Exs. 1–65.) Bob Evans asserts that this evidence, coupled with the small number of opt-in Plaintiffs, shows that there is "no 'widespread' plan" by which Bob Evans violates the FLSA rights of its assistant managers. In the Court's view, the small number of assistant managers who have joined this lawsuit up to this point and the fact that there may be assistant managers properly classified as exempt is of limited relevance to the question of conditional certification. First, to obtain conditional certification, a lead plaintiff is not required to show unified violative policies. *O'Brien*, 575 F.3d at 584. Second, there is no requirement in the FLSA that collective actions be maintained by a certain threshold number of employees. Rather, the only requirement is that opt-in plaintiffs be similarly situated with the lead plaintiff. Third, the Court notes that 64 is also a relatively small sample of the over 2,500 assistant managers employed by Bob Evans since August 2010.

Finally, Bob Evans argues that because the Court allowed limited discovery in this case, it should hold the Plaintiffs to a higher standard as to the issue of conditional certification as discussed by Judge Zouhary in *Creely v. HCR Manocare, Inc.*, 789 F. Supp. 2d 819, 821–27 (N.D. Ohio 2011). However, even if this so-called "modest plus" standard were applied by the Court, Snodgrass has nevertheless demonstrated that conditional certification should be granted.

8

Judge Zouhary described his formulation and application of the "modest plus" standard as follows:

> [I]n order to provide some measurable standard by which to judge if Plaintiffs have made a sufficient modest "plus" factual showing, and to prevent the absurd result of granting the parties time to do discovery on the conditional certification question but subsequently imposing no incremental hurdle in determining whether Plaintiffs may send opt-in notices, this Court will compare Plaintiffs' allegations set forth in their Complaint with the factual record assembled through discovery (Doc. Nos. 34–69) to determine whether Plaintiffs have made sufficient showing beyond their original allegations that would tend to make it more likely that a class of similarly situated employees exists. In other words, the Court will review whether Plaintiffs have advanced the ball down the field—showing that it is more likely that a group of similarly situated individuals may be uncovered by soliciting opt-in plaintiffs. And, because the Court will continue to use a lenient standard, Plaintiffs need not have moved the ball far down the field, but they need to have shown some progress as a result of the discovery as measured against the original allegations and defenses.
>
> How much progress Plaintiffs have made will be considered in conjunction with Defendants' evidence and in the context of Plaintiffs' unshifting burden to prove their claims. However, the Court does not weigh the relative merits of the parties' claims at this conditional certification stage. A full and complete merit review of both sides' arguments is best preserved for the detailed and strict review conducted at stage two, when the Court and the parties have the benefit of a fully developed factual record.

*Id.* at 827.

As already stated, the allegations in the amended complaint are corroborated by Snodgrass' testimony and the declaration of the opt-in plaintiffs. The record also reflects that other assistant managers may spend substantial amounts of time performing non-exempt tasks as is the case with Snodgrass and the opt-ins. Thus, the Plaintiffs have successfully moved the proverbial ball down the field through the discovery that has occurred so far and conditional certification is warranted.

**C.**

In light to the Court's conditional certification of the proposed class, Bob Evans is directed to produce to the Plaintiffs, within 21 days of the date of this Opinion and Order, the following:

> A list, in electronic format, of all persons employed by Bob Evans as Assistant Managers at any time from August 27, 2009 to the present including, subject to the possession of such information by Bob Evans,: names, addresses, telephone numbers, dates of employment, locations of employment, and work and personal e-mail addresses.

Further, within the 21-day period, the Parties shall confer and attempt to agree upon the form of notice to be sent to the prospective class members.  If the Parties are able to agree upon the form of notice, they shall jointly file the proposed notice with the Court for the Court's approval.  If they are unable to agree, they shall so notify the Court.

**IV.**

For the above stated reasons, the Plaintiffs' Motion for Conditional Certification (Doc. 45) is **GRANTED** and the Defendants' motion to strike (Doc. 49) is **DENIED**.  A collective class consisting of all persons either employed or previously employed as assistant managers by Defendant Bob Evans Farms, LLC at any time from August 27, 2009 to the present is conditionally certified.

**IT IS SO ORDERED.**

*[signature]*

**UNITED STATES DISTRICT JUDGE**