**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **DAVID SNODGRASS, Individually and on Behalf of All Other Persons Similarly Situated,** | **Case No. 2:12-cv-768** |
| **Plaintiffs,** | **Judge Peter C. Economus** |
| **v.** | **Magistrate Judge King** |
| **BOB EVANS FARMS, LLC,,** | **MEMORANDUM OPINION AND ORDER** |
| **Defendant.** | |

This matter is before the Court for consideration of Plaintiffs' Motion for Partial Summary Judgment Regarding the Method of Calculating Damages (ECF No.148), and Defendant Bob Evans' Cross Motion for Summary Judgment (ECF No. 150).

## I.  Background

This is a collective action brought pursuant to the provisions of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"). Named Plaintiff David Snodgrass[1] is joined in this action by opt-in Plaintiffs Amanda Kirchner, Keith Sutton, Barbara Gibbs, Brent Neff, Jennifer Britt, Jennifer Curtis, Brett Kubin, Clifford Britton, Annquance Williams, and Jackie Franklin (collectively "Plaintiffs"). Snodgrass, on behalf of himself and others similarly situated, claims that Defendant Bob Evans Farms, LLC ("Bob Evans")[2] failed to pay him overtime wages as required by the FLSA while he was employed by Bob Evans as an assistant restaurant manager ("AM"). This type of action is referred to as a "misclassification" case, wherein the plaintiff alleges that he was misclassified as exempt from the overtime provisions of the FLSA.

---

[1] By Opinion and Order dated June 6, 2013, the Court allowed Snodgrass to substitute as lead plaintiff for Dallas Thorn, whose claims the Court concurrently dismissed with prejudice.  (*See* ECF No. 62.)

[2] For purposes of this Opinion and Order and the collective class conditionally certified herein, the terms "Bob Evans Farms, LLC" and "Bob Evans" should be interpreted to include Bob Evans Farms, LLC's predecessor entity Bob Evans Farms, Inc.

On December 20, 2013, this Court conditionally certified a collective class "consisting of all persons either employed or previously employed as assistant managers by Defendant Bob Evans Farms, LLC at any time from August 27, 2009 to the present." (ECF No. 72 at 10.)

Plaintiffs and Defendant Bob Evans have filed cross motions for partial summary judgment. The motions request that this Court determine the proper method of calculating overtime damages for misclassifying assistant managers as exempt from the FLSA overtime requirement.

## II.    <u>Factual Record</u>

The parties provide the following facts as evidence supporting their cross motions for summary judgment.

### 1.    *Defendant Bob Evans*

Bob Evans' provides facts from Bob Evans' corporate documents that discuss the number of hours AMs worked. This evidence consistently shows that AMs were paid a set salary as exempt employees. John Carothers (Bob Evans's VP-Field Human Resources) testified that all AMs are paid on a salary basis. John Carothers Dep. 38:18-20. John Carothers testified:

> Q: Is there a minimum number of hours that assistant managers are expected to work each week?
>
> A: Until the work's done.

Carothers Dep. 41:24-25; 42:1-4. Similarly, corporate representative Natalie Ward testified that, "number of hours per week will be determined by the individual circumstances of each restaurant." Ward Dep. 80:11-21; 79:13-16. Region Vice President Jason Pruss testified that, "I have always explained that, you know, the salary covers all the hours you work." Jason Pruss Dep. 82:9-11. Pruss explained that "[t]he Manager schedules vary. I think 45 to 50 is pretty much the standard what our managers work, but it varies from week to week from restaurant to

restaurant." Pruss Dep. 81:19-23 ("[T]he schedule does vary from week to week, it is typically, you know, there is a range, many factors affect that."). Director of Concept Implementation Michael Erwin testified that the Assistant Managers are "salaried managers and they're paid for all hours worked." Michael Erwin Dep. 14:22-23. He further testified that "managers are paid a salary for all hours work, that they're paid to manage in the restaurants." Erwin Dep. 15:7-9; 26:24-25, 27:1-13.

Bob Evans provides deposition testimony from Plaintiffs regarding AMs' salary. The testimony reveals that AMs were paid the same regardless of hours worked. David Snodgrass testified:

> Q: You were paid a salary, correct?
>
> A: Yes.
>
> Q: All right. And you got the same salary each week that you worked?
>
> A: Yes.
>
> Q: And it didn't matter how many hours you worked, you got the same salary?
>
> A: Yes.

David Snodgrass Dep. 78:9-13.

> Reginald Oliver testified:
>
> Q: I understand that according to your testimony, John told you that you would be scheduled 45 to 50 hours a week. My question is you knew that you were going to be getting the same salary every week.
>
> A: Well, to answer, yes.
>
> Q: And you knew you were never going to get overtime?
>
> A: Yes.

Reginald Oliver Dep. 58:17-24; 59:1. *See also,* Jennifer Curtis Dep. 99:10-19 ("Q: And you received that salary no matter how many hours you worked, right? A: Yes."); Debora Adams Dep. 76:22-24; 77:1 ("Q: And you got the same salary every week no matter how many hours you worked, correct? A: Exactly."); Bret Kubin Dep. 59:6-11 ("Q: And you received the same salary no matter how many hours a week you worked, right?" A: Correct."); Brent Neff Dep. 166:16-18 ("Q: And is it true that you got the same salary no matter how many hours you worked? A: Yes."); Deborah Smith Dep. 154:11-13 ("Q: Did you receive the same salary every week no matter how many hours you worked? A: Yes, sir.").

Bob Evans provided deposition testimony from Plaintiffs discussing their understanding that they would receive no overtime compensation. Plaintiff Bret Kubin testified:

> Q: But you understood that no matter how many hours you worked, you would get the same salary, right? ***
>
> A: I mean, yes. It was never going to be overtime pay. There was going to be – you are going to be a salary no matter how many hours you work you'll get that same pay.

Kubin Dep. 60:2-9. Other opt-ins similarly testified

Bob Evans provided deposition testimony from Plaintiffs that showed the actual number of weekly hours worked varied. David Snodgrass testified to 50-50 hours. David Snodgrass Dep. 159:16-20. Brent Neff testified to 55-65 hours. Brent Neff Dep. 31:10. Bret Kubin testified to 65 hours. Bret Kubin Dep. 77:2-8. Jennifer Curtis testified to 50 hours at the Fairmont location, 50-60 hours at the McKnight location, and 65-70 hours at the Bridgeport location.  Jennifer Curtis Dep. 115:10-12; 134:10-15; 147:2-12. Debora Adams testified to 45-50 hours. Debora Adams Dep. 66:16-19. Debora Smith testified to 45-60 hours. Debora Smith Dep. 157:12-18. An opt-in Plaintiff in a Verified Response to Interrogatory testified to 55-60 hours. Verified Response to Interrogatory No. 13 (Exhibit 11).

### 2.    *Plaintiffs*

The evidence consistently shows that AMs expected to work a regular schedule of 45-55 hours per week, and that AMs believed their salary was intended to cover 45 to 50 hours per week. Plaintiffs refer to provisions in Bob Evans' corporate documents and testimony of Bob Evans' corporate representatives that assert 45 to 50 hours as the number of hours AMs were expected to work. For example, on April 20, 2010, Bob Evans General Manager Bobbie Jo Zeigler issued a Management Conversation Sheet—a form for employee discipline—to AM Sheila Schmittle. *See* Exhibit A, Management Conversation Sheet. It said: "All levels of management is [*sic*] scheduled to work a 45 to 50 hour work week." Similarly, corporate Representative Natalie Ward testified that, "[a]ll levels of management must be scheduled for 45 to 50 hours per week." Exhibit D, Deposition of Natalie Ward, p. 78-79. Ms. Ward said: "It's my understanding that they are trained to know that they will work approximately 50 hours per week." *Id.* at 79.

Moreover, Bob Evans' manager handbook states: "All levels of management must be scheduled for 45 to 50 hours per week." *See* Exhibit 1, 2009 Management Handbook, p. 10; *see also* Exhibit 2, November 2011 Management Addendum, p. 7 (same). The following is an excerpt discussing schedules taken directly from Bob Evans Management Handbook:

## MANAGEMENT SCHEDULES

The Bob Evans Restaurant Management work week is a flexible schedule, written by the General Manager and approved by the Area Director. It is the General Managers responsibility to ensure that their restaurant has adequate management staffing for each day. Schedules must be written so that General Managers allow themselves optimum time to develop managers and employees.

When used properly, flexible scheduling allows managers to make personal plans and gives them the opportunity to enjoy time away from work that best fits their individual needs.

All levels of management must be scheduled for 45-50 hours per week. The number of hours per week will be determined by the individual circumstances of each restaurant.

λ   An "**OPEN**" schedule begins 45 minutes prior to the restaurant opening and is normally a 9 to 10 hour schedule.

λ   A "**CLOSE**" schedule starts 7 ½ to 8 ½ hours before the restaurant closes and is normally a 10-hour schedule.

λ   A "**SWING**" schedule can be early or late and is normally a 10-hour schedule.

Exhibit 2, November 2011 Management Addendum, p. 7.

Plaintiffs provide deposition testimony that reveals AMs expected to work regular schedules of 45-50 hours per week. Plaintiff David Snodgrass testified that his regular schedule was consistent with the November 2011 Management Addendum articulating the 45-50-hour expected work schedule. *See* Exhibit 3, Deposition of David Snodgrass, pp. 159:12-14, 160:12-14, 161:1-9. Similarly, Plaintiff Debora Adams testified as follows:

A. [I]t was my understanding that as having the title of Assistant Manager, you worked 45 to 50 hours a week, that's what I was led to believe when I signed up to be an Assistant Manager and spoke with [Area Coach] Don Adams.

Q. And I understand that was your understanding of the schedule but I'm talking about your salary. You knew that you were going to get the same salary no matter how many hours you worked, right?

A. My salary was based on 45 to 50 hours a week. That is what I was told.

* * *

Q. Now, you said that you were told 45 to 50 hours. Was that from the handbook?

A. That was from the area coach and I believe it's in the handbook. I'm not a hundred percent sure that it was in the handbook [it was] but I do remember discussing the hours with Don Adams.

6

Q. Don Adams said that you would be typically scheduled for 45 to 50 hours, right?

A. Yes.

*See* Exhibit 4, Deposition of Debora Adams, pp. 77:16-78:5, 79:2-12.

Plaintiff Brent Neff testified as follows:

Q. When you were hired at Bob Evans, you were told that you would work 40 hours a week, right – or 50 hours?

A. 50 hours, I was told that, yeah, it would be 50 hours. I was salaried at 50 hours a week was the exact phrase that I was told....

*See* Exhibit 5, Deposition of Brent Neff, p. 240:1-6.

Plaintiff Jennifer Curtis also testified as follows:

Q. And when you were hired by Bob Evans, kind of moving back, what was your expectation in terms of how many hours you were going to work?

A. I was told and expected 50.

*See* Exhibit 6, Deposition of Jennifer Curtis, p. 148: 13-16.

Plaintiff Bret Kubin similarly testified as follows:

Q. When you started as an assistant manager, did your general manager tell you how many hours a week you could expect to work?

A. I was told I was going to work about 40 to 45 at that time.

*See* Exhibit 7, Deposition of Bret Kubin, p. 59:12-16.

Former Plaintiff Dallas Thorn likewise testified as follows:

Q. Were you scheduled for 45 to 50 hours per week?

A. Yes.

*See* Exhibit 8, Deposition of Dallas Thorn, p. 112:15-16

7

Plaintiff Reggie Oliver testified that he was told he "would be working 45 to 50 hours." *See* Exhibit B, Deposition of Reggie Oliver, p. 15, lines 11-12. Regional Human Resources Director John Haslinger, who hired Mr. Oliver, told him the AM's regular work schedule "would be 45 to 50 hours a week" during Oliver's interview. *Id.* at 18:4-9. Mr. Oliver further testified as follows:

> Q. And you knew that you were going to be getting the same amount every pay period regardless of how many hours you worked; correct?
>
> A. Well, my salary was based on the fact of me and John discussing 45 to 50 hours a week. I wouldn't [*sic*] never have taken this position if I had known that I was going to be working 55 to 60 hours a week. I could have stayed at the Burger King [*i.e.,* his prior employer].
>
> Q. But you knew that you were going to get the same salary every pay period no matter what; correct?
>
> A. Under the circumstances that I was going to work 45 to 50 hours a week.

*Id.* at 58:3-16.

Plaintiff Michael Evans testified that he was supposed to be (and in practice was) "[s]cheduled 50" hours per week assuming the restaurant was operating normally. *See* Exhibit C, Deposition of Michael Evans, p. 119, lines 11-14. When he was hired by Bob Evans, Mr. Evans was told he would work 50 hours per week: "Fifty – yeah, they promised me a better quality of life." *Id.* at 218:16-20. And he understood that his "salary was to compensate [him] for 50 hours a week." *Id.* at 218:21 to 219:1.

Plaintiffs assert that, "each of the deposed opt-ins has testified that their salaries were based on an expectation that they would normally be working regular schedules of 45 to 50 hours per week." (ECF No. 156 at 2.). Debora Adams testified, "My salary was based on 45 to 50 hours a week." *Id.* at Ex. 4, p. 66. Brent Neff testified, "I was salaried at 50 hours a week." *Id.* at Ex. 5, p. 240. Jennifer Curtis testified, "I was told and expected 50 [hours per week]." *Id.* at Ex. 6, p. 148.

III.    **Standard of Review**

The Court now turns to the cross-motions for summary judgment. Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting prior version of FED. R. CIV. P. 56). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323–25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation and citation omitted).

IV.    **Analysis**

The FLSA is designed to be "'a broadly remedial and humanitarian statute.'" *Fegley v. Higgins*, 19 F.3d 1126, 1132 (6th Cir. 1994) (quoting *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 143 (6th Cir. 1977)). The Sixth Circuit directs this Court to "construe the Act's definitions liberally to effectuate the broad policies and intentions of Congress." *Id.* at 144. Indeed, there is no dispute that "the FLSA is to be construed liberally to further its broad remedial purpose and that 'exemptions are to be narrowly construed against the employers.'" *Bridewell v. Cincinnati Reds*, 155 F.3d 828, 831 (6th Cir. 1998) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

The FLSA requires employers to "pay overtime to employees who work more than forty hours a week." *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 846 (6th Cir. 2012) (citing 29 U.S.C. § 207). The FLSA "generally requires covered employers to pay . . . overtime compensation for hours of work exceeding 40 in a workweek at a rate of one and one-half times an employee's regular rate of pay." *Lewis v. Huntington Nat'l Bank*, 838 F.Supp. 2d 703 (S. D. Ohio 2012) (citing 29 U.S.C. §§ 206(a), 207(a)(1)).

The overtime calculation can be expressed as the following function: R X 1.5 X H = OT. Where R = regular rate of pay, H = hours worked over 40, and OT = overtime. To further illustrate this function, take for example Employee A. Employee A's regular rate of pay is $10 per hour, and she works 50 hours in a given week. Employee A receives her regular rate of pay for the first 40 hours worked *i.e.*, $10 X 40 = $400. Employee A receives overtime compensation at 1.5 X her regular rate of pay for all hours worked over 40 *i.e.*, 1.5 X 10 X 10 = $150. In total Employee A receives $550 that week.

Some employees, however, are "exempt" from the overtime requirements under 29 U.S.C. § 213.[3] Exempt employees are often paid on a salary basis. *See* 29 C.F.R. § 541.602(a) (2004). Exempt employees paid on a salary basis receive "(1) a predetermined amount, which (2) was not subject to reduction (3) based on quality or quantity of work performed." *Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618, 627 (6th Cir. 2009).

If an employer improperly classifies a nonexempt employee as exempt, the employer must compensate the employee for unpaid overtime. In a misclassification case, where employees are paid at a rate other than hourly, the Court must determine the regular rate of pay

---

[3] The exemptions in § 213(a)(1) include workers employed in a "bona fide executive, administrative, or professional capacity," as defined by the Secretary of Labor. For each of these three functions, the Secretary of Labor has promulgated rules regarding when an employee qualifies as exempt. *See* 29 C.F.R. § 541.100 (executive employees); 29 C.F.R. § 541.200 (administrative employees); 29 C.F.R. § 541.300 (professional employees).

for the employee. *Arrington v. Michigan Bell Tel. Co.*, No. 10-10975, 2012 WL 4868225, at *1 (E.D. Mich. Oct. 15, 2012). The FLSA does not specifically define the term "regular rate." *Mitchell v. Abercrombie & Fitch, Co.*, 428 F.Supp.2d 725, 732 (S.D. Ohio 2006) *aff'd*, 225 F. App'x 362 (6th Cir. 2007). The regular rate of pay, however, is an hourly rate. *See* 29 C.F.R. § 778.109. The regular rate of pay for a salaried employee is set forth in 29 C.F.R. § 778.113 ("§ 778.113"). The regulation provides:

> (a) Weekly salary. If the employee is employed solely on a weekly salary basis, his regular hourly rate of pay, *on which time and a half must be paid,* is computed by dividing the salary by the *number of hours which the salary is intended to compensate.*

29 C.F.R. § 778.113 (emphasis added). Courts across the country have developed "markedly different approaches to calculating back pay in exemption mis-classification cases."' *Frisby v. Keith D. Weiner & Associates Co.*, No. 1:09-CV-2027, 2010 WL 1630107, at *9 (N.D. Ohio Apr. 21, 2010) (quoting *Desmond v. PNGI Charles Town Gaming, LLC*, 661 F.Supp.2d 573, 578 (D.W. Va. 2009)). And, "[t]here is no Sixth Circuit precedent controlling the calculation of damages in FLSA misclassification cases." *Arrington*, No. 10–10975, 2012 WL 4868225, at *2.

In instant action, Bob Evans' AMs were classified as exempt. As exempt employees, Bob Evans paid AMs a weekly salary and did not pay any overtime. (*See* ECF No. 148 at 2; ECF No. 150 at 13.) The parties disagree on the proper method of calculating unpaid overtime compensation in the event Bob Evans misclassified AMs as exempt. The parties ask this Court to determine as a matter of law the appropriate method of calculating unpaid overtime.

Defendant Bob Evans argues that the Court should use the fluctuating workweek's ("FWW") half-time method.[4] (ECF No. 150.) As discussed in detail below, this method

---

[4] The Court uses the following terms interchangeably: "FWW," "FWW half-time method," "half-time method," "half-time calculation," "FWW method," "50% method," and other similar combinations. Each term refers to the

compensates employees at a rate of 50% of their regular rate of pay for all hours worked over 40, and the regular rate fluctuates based on the hours worked. On the other hand, Plaintiffs argue that AMs are entitled to overtime compensation at the normal one and one half the regular rate of pay for all hours worked over 40. (ECF No. 148 at 8-9.) Plaintiffs contend that the FWW or half-time method for overtime compensation does not apply to cases of misclassification. (*Id.*) Instead, Plaintiffs contend that in a misclassification case the Court must reconstruct what the rate of pay would have been absent a violation. (ECF No. 148 at 3.)

### A.    <u>Application of the FWW Half-Time Method</u>

The FWW provides a compensation scheme that employers can use to calculate overtime pay for nonexempt employees. This payment method was first articulated by the United States Supreme Court in *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942). *Missel* held that an employer and employee could legally agree, in certain circumstances, to a compensation arrangement where the employee would be paid a flat weekly rate for fluctuating hours without violating the FLSA, provided that the agreement contained a provision for overtime pay and the wage was sufficient to satisfy minimum wage requirements and offer a premium of at least "fifty per cent for the hours actually worked over the statutory maximum." *Id.* at 581. Following *Missel*, the FWW method and its requirements were codified under § 778.114.

The FWW half-time calculation under *Missel* does not differ from the FWW half-time calculation under § 778.114. Both *Missel* and § 778.114, use the exact same formula. Section 778.114 illustrates how this calculation works:

> (b) The application of the principles above stated may be illustrated by the case of an employee whose hours of work do not customarily follow a regular schedule but vary from week to week, whose total weekly hours of work never exceed 50

---

method of calculating overtime articulated in *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942), and defined *infra*.

hours in a workweek, and whose salary of $600 a week is paid with the understanding that it constitutes the employee's compensation, except for overtime premiums, for whatever hours are worked in the workweek. If during the course of 4 weeks this employee works 40, 37.5, 50, and 48 hours, the regular hourly rate of pay in each of these weeks is $15.00, $16.00, $12.00, and $12.50, respectively. Since the employee has already received straight-time compensation on a salary basis for all hours worked, only additional half-time pay is due. For the first week the employee is entitled to be paid $600; for the second week $600.00; for the third week $660 ($600 plus 10 hours at $6.00 or 40 hours at $12.00 plus 10 hours at $18.00); for the fourth week $650 ($600 plus 8 hours at $6.25, or 40 hours at $12.50 plus 8 hours at $18.75).

29 C.F.R § 778.114. Both *Missel* and § 778.114 are silent on the application of the FWW method to misclassification cases.

Although the Sixth Circuit has not addressed the retroactive application of the FWW method in a misclassification case, in a decision from this Court, Judge Algenon L. Marbley rejected the FWW method and found that in a misclassification case an employee's rate of pay must be reconstructed to what it would have been *i.e.*, the normal time and a half rate. *Cook v. Carestar, Inc.*, No. 2:11-CV-00691, 2013 WL 5477148, at *11 (S.D. Ohio Sept. 16, 2013). Other District Courts within the Sixth Circuit have also rejected the use of the FWW 50% method in misclassification cases. *See Stultz v. J.B. Hunt Transp., Inc.*, No. 13-CV-13705, 2014 WL 3708807, at *3 (E.D. Mich. July 28, 2014) (rejecting application of the FWW method and finding that, "Plaintiff is entitled to be compensated for hours worked in excess of forty per week at a rate of 1.5 times his regular hourly rate"); *Cowan v. Treetop Enters.*, 163 F.Supp.2d 930, 941 (M.D. Tenn.2001) (FWW "requires a *contemporaneous* payment of the half-time premium for an employer to avail itself of the fluctuating workweek provision"); *Heavenridge v. Ace-Tex Corp.*, No. 92-75610, 1993 WL 603201, at *4 (E.D. Mich. Sept. 3, 1993) (finding that FWW does not apply when no clear mutual understanding existed, but that defendant was insulated from liability under the Portal to Portal Act).

13

Sister District Courts throughout the country agree with Judge Marbley and have declined to retroactively apply the FWW half-time method. *McCoy v. N. Slope Borough*, No. 3:13-CV-00064-SLG, 2013 WL 4510780, at *19 (D. Alaska Aug. 26, 2013) ("This Court is persuaded by the reasoning of those district courts that have concluded that the FWW method should not be applied in a misclassification case, particularly in light of the FLSA's remedial purpose."); *Wallace v. Countrywide Home Loans Inc.*, No. SACV 08-1463-JST, 2013 WL 1944458, at *7 (C.D. Cal. Apr. 29, 2013) ("in the context of misclassification cases, the FWW method should not apply"); *Costello v. Home Depot USA, Inc.*, 944 F. Supp. 2d 199, 206 (D. Conn. 2013) (in a misclassification case in which the employer believes that no overtime payments are ever due to the employee, it is simply logically impossible" to meet the FWW requirements) to have the kind of "clear, mutual understanding" involving the weekly wage rate and contemporaneous overtime premiums"); *Zulewski v. Hershey Co.*, Case No. CV 11B05117BKAW, 2013 WL 633402, at *6 (N.D. Cal. Feb. 20, 2013) ("the retroactive application of the FWW method in the misclassification context does not square with [*Missel*], because [*Missel*] requires an agreement between the parties that the fixed weekly salary was compensation for all straight time [and] such an agreement is not present in misclassification cases"); *Hasan v. GPM Investments, LLC*, 896 F. Supp. 2d 145, 149 (D. Conn. 2012) (finding that the FWW method of compensation is never appropriate in a case where an employer has misclassified an employee as exempt from the FLSA's protections); *Blotzer v. L–3 Communications Corp.*, Case No. VB11B274BTUCBJGZ, 2012 WL 6086931, at *11 (D. Ariz. Dec. 6, 2012) ("attempting to retroactively apply the FWW method to a miscalculation case is akin to the old square peg in a round hole problem [because it requires] apply[ing] § 778.114 to a situation it was not intended to address"); *Ransom v. M. Patel Enters., Inc.*, 825 F. Supp. 2d 799, 808 (W.D. Tex. 2011) (rejecting retroactive application of the

14

FWW under § 778.114 and *Missel*); *Perkins v. S. New England Tel. Co.*, No. 3:07-CV-967 JCH, 2011 WL 4460248, at *4 (D. Conn. Sept. 27, 2011) ("Although several circuits have applied section 778.114 in a misclassification case, the court does not find those decisions to be particularly persuasive, especially given the lack of analysis regarding the difference between applying the fluctuating workweek method prospectively—where both the employer and the employee have agreed regarding compensation—and retrospectively—when the employer has made a unilateral, and incorrect, decision that an employee is exempt from being paid overtime at all."); *Monahan v. Emerald Performance Materials, LLC*, 705 F. Supp. 2d 1206, 1217 (W.D. Wash. 2010) (the FWW "method cannot be used to calculate overtime retroactively (where it has not been paid contemporaneously with the overtime work for the purposes of determining damages under Washington State law."); *Russell v. Wells Fargo & Co.*, 672 F. Supp. 2d 1008, 1014 (N.D. Cal. 2009) ("when an employee is erroneously classified as exempt and illegally not being paid overtime, neither of th[e] legal prerequisites for use of the FWW method is satisfied"); *Scott v. OTS Inc.*, No. CIV.A.1:02CV1950-AJB, 2006 WL 870369, at *12 (N.D. Ga. Mar. 31, 2006) ("Since contemporaneous payment of overtime compensation is a necessary prerequisite for application of the fluctuating workweek method, as a matter of law defendant has failed to prove that "all the legal prerequisites for use of the 'fluctuating workweek' method of overtime payment are present."); *Rainey v. American Forest and Paper Ass'n, Inc.*, 26 F.Supp.2d 82 (D. D. C.1998) ("If the parties had originally agreed that plaintiff's compensation would be governed by the fluctuating workweek method, then defendant would have had to have conceded from the start that plaintiff was covered by" the overtime provisions of the FLSA.); *see also*, *Hunter v. Sprint Corp.*, 453 F. Supp 2d 44, 62 (D. D. C. 2006) (declining to address the

specific issue of misclassification, but concluding that, under the circumstances presented by this case, it would be inappropriate retroactively to apply the FWW method.").

This Court is persuaded by the reasoning of those courts that have concluded the FWW method should not be applied in a misclassification case, particularly in light of the FLSA's remedial purpose. The Court will discuss its finding in further detail *infra*.

### 1. Application of 29 C.F.R. § 778.114

Bob Evans asserts that *Missel*—not § 778.114—supports the retroactive application of the FWW method in a misclassification case. Bob Evans, however, relies upon a Department of Labor ("DOL") opinion that retroactively apply the FWW method under § 778.114. (ECF No. 19-22.) Bob Evans also notes that "the Department of Labor has approved using a 50% overtime premium to calculate unpaid overtime compensation in mistaken exemption classification cases," (ECF No. 150 at 20.) Additionally, Bob Evans cites the following opinions that retroactively apply the FWW method under § 778.114: *Clements v. Serco, Inc.*, 530 F.3d 1224 (10th Cir. 2008); *Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35 (1st Cir. 1999); *Martin v. Tango's Restaurant*, 969 F.2d 1319 (1st Cir. 1992). (ECF No. 150 at 13.) Therefore, the Court will address retroactive application of the FWW method under § 778.114. Moreover, § 778.114 provides the necessary context to understanding why *Missel* does not authorize the retroactive application of the FWW method.

In 1968, the Department of Labor (DOL) promulgated § 778.114, an interpretive rule intended to codify the Supreme Court's decision in *Missel.* The regulation defines the FWW method and its requirement. Section 778.114 provides:

> An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a *clear mutual understanding* of the parties that the fixed salary is

compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, *and if he receives extra compensation, in addition to such salary*, for all overtime hours worked at a rate not less than one-half his regular rate of pay. Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.

*Id.* (emphasis added). To restate the above as elements the regulations requires:

> (1) the employee's hours must fluctuate from week to week;

> (2) the employee must receive a fixed salary that does not vary with the number of hours worked during the week (excluding overtime premiums);

> (3) the fixed amount must be sufficient to provide compensation every week at a regular rate that is at least equal to the minimum wage; and

> (4) the employer and employee must share a "clear mutual understanding" that the employer will pay that fixed salary regardless of the number of hours worked.

*Sisson v. Radioshack Corp.*, No. 1:12CV958, 2013 WL 945372, at *4 (N.D. Ohio Mar. 11, 2013) (citing 29 C.F.R. § 778.114(a), (c); *Mitchell*, 428 F.Supp.2d at 734). The Sixth Circuit has determined that the FWW does not violate the FLSA so long as the requirements are met. *See Highlander v. K.F.C. Nat. Management Co.*, 805 F.2d 644, 647 (6th Cir.1986).

The requirements of § 778.114 can never be satisfied in a misclassification case, however, because (1) there are no contemporaneous payments of overtime, and (2) there is no clear mutual understanding. First, the FWW under § 778.114 requires an employer to make contemporaneous overtime payments. *Cowan*, 163 F. Supp. 2d at 942. In a misclassification

case, "because the employees [is] erroneously classified as exempt, overtime compensation [is] not provided contemporaneously." *Russell*, 672 F. Supp. 2d at 1014.

Second, "[u]nder § 778.114(a), it is the employer's burden to demonstrate a 'clear mutual understanding' between the parties that the fixed salary received by the plaintiff is compensation for the hours the plaintiff worked during each workweek, whatever that number, rather than for working forty hours or another fixed weekly work period." *Grant v. Shaw Grp., Inc.*, No. 3:08-CV-350, 2012 WL 124399, at *9 (E.D. Tenn. Jan. 17, 2012) (citing *Cowan*, 163 F.Supp.2d at 941; *Roy v. Cnty. of Lexington*, 141 F.3d 533, 547 (4th Cir.1998)). As part of a clear mutual understanding, the regulation "requires employees to understand the essential feature of the fluctuating workweek plan, and that the employer is not required to do more than specifically tell him or her how the payroll system works, when the compensation system can be gleaned from policies, practices, and procedure." *Mitchell*, 428 F. Supp. 2d  at 737-38. In a misclassification case, there is never a clear mutual understanding. The district court in *Boltzer* explains this point further:

> The significance of the employee's lack of knowledge of nonexempt status cannot be overstated. The fundamental assumption underpinning the FWW is that it is fair to use it to calculate overtime pay because the employee consented to the payment scheme. But in the context of an FLSA misclassification suit when consent is inferred from the employee's conduct, that conduct will always, by definition, have been based on the false assumption that he was not entitled to overtime compensation. The job will have been advertised as a salaried position. The employee, if he raised the issue, will have been told that the salary is all he will receive, regardless of how many hours he works. That is the very nature of a salaried, exempt position. When it turns out that the employer is wrong, and it is learned that the FLSA required the employer to pay the employee an overtime premium, the notion that the employees conduct before he knew this is evidence that the employee somehow consented to a calculation method for the overtime pay that no one even knew was due, is perverse.

No. CV-11-274-TUC-JGZ, 2012 WL 6086931, at *9-12. "Put another way, in a misclassification case, the parties never agreed to an essential term of a fluctuating work week arrangement—that

overtime would be paid at different rates depending on the number of hours worked per week." *Hasan*, 896 F. Supp. 2d at 149-50 (citing *Perkins*, 2011 WL 4460248 at *3; *Russell*, 672 F.Supp.2d at 1013–14; *Rainey*, 26 F.Supp.2d at 100–02).

In the instant action, Bob Evans' "prior assertion of exempt status for these employees and the lack of contemporaneous payment of the 50% overtime to [AMs,] bar[s] [Bob Evans'] reliance upon Section 778.114(a)." *Cowan*, 163 F. Supp. 2d at 942. Additionally, there is no clear mutual understanding. The evidence demonstrates a mutual understanding that AMs' would receive a salary. But there was no clear mutual understanding that the fixed salary was intended as compensation, apart from overtime premiums for the hours worked each workweek—rather, it was intended as full compensation for the workweek. Bob Evans cannot demonstrate a clear mutual understanding that includes how overtime will be compensated as required by § 778.114.

The Circuit courts that use *Missel* as authority to retroactively apply the FWW method, agree with this Courts conclusion that § 778.114 cannot apply retroactively in a misclassification case. *See Black v. Settlepou*, *P.C.*, 732 F. 3d 497 (5th Cir. 2013) ("Section 778.114 also requires the contemporaneous payment of overtime premiums at one-half the employee's regular rate of pay, a requirement that by definition has not been met in an employee's suit for unpaid overtime premiums."); *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1311 (11th Cir. 2013) (stating that § 778.114 "is not a remedial measure that specifies how damages are to be calculated"); *Urnikis–Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 679 (7th Cir. 2010) ("finding that § 778.114(a) itself is inapplicable"). In *Urnikis-Negro*, the Seventh Circuits provides the following discussion of § 778.114:

> Several aspects of this interpretive rule bear mentioning. First, the rule is forward looking. It describes a manner in which an employer may compensate a nonexempt employee by means of a fixed wage for variable work hours and still comply with the overtime obligation imposed by the FLSA. Second, the rule

requires both a "clear mutual understanding" between the employer and employee that the fixed wage will constitute the employee's regular or straight-time pay for any and all hours worked in a given week *and* the separate payment of an overtime premium for any hours in excess of 40 that are worked in that week. § 778.114(a). Third, the rule on its face is not a remedial measure. It says nothing about how a court is to calculate damages where, as here, the employer has breached its obligation to pay the employee an overtime premium. Its focus instead is on how an employer may comply with its statutory obligations in the first instance and avoid liability for breach of those obligations.

616 F.3d at 677-78.

Last, Bob Evans reliance on a DOL Opinion Letter, FLSA 2009–3, in which the DOL stated that the FWW method could be applied retroactively to satisfy the requirements of the FLSA does nothing to change this Court's opinion. U.S. Dep't of Labor Opinion Letter FLSA 2009–3, 2009 WL 648995 (Jan. 14, 2009). The DOL published this letter after choosing not to pursue a Notice of Proposed Rulemaking that had proposed to omit the phrase "apart from overtime premiums" from the sentence regarding the "clear mutual understanding" required to rely on the fluctuating workweek method. *See Russell*, 672 F.Supp.2d at 1013; *see also*, 29 C.F.R. 778.114. In the letter, the DOL endorsed the use of section 778.114 to compute retroactive payment of overtime premiums, citing to the *Clements* and *Valerio* decisions. *See* Wage and Hour Opinion Letter FLSA 2009–3. On April 5, 2011, however, DOL backtracked, stating that it "does not believe that it would be appropriate to expand the use of [the FWW] of computing overtime pay beyond the scope of the current regulation." *See* Dep't of Labor Rules & Regulations, 76 F.R. 18832–01, 18850 (April 5, 2011). In light of the circumstances under which the Opinion Letter was promulgated and the fact that the DOL has since reversed its position, the court does not find the Opinion Letter to be persuasive.

Therefore, the Court finds that in the instant misclassification case, the FWW method cannot be retroactively applied under § 778.114 because Bob Evans did not contemporaneously pay overtime, and there was no clear mutual understanding.

### 2.        *Application of Missel to Misclasification Cases*

The Court now turns to the retroactive application of the FWW method under *Missel.*
Defendants Bob Evans ultimately acknowledges that misclassification cases may not meet the
requirements of § 778.114, and focuses on the argument that *Missel* provides authority for the
retroactive application of FWW method in misclassification cases. (ECF No. 150 at 25.) Bob
Evans summarizes its argument as follows:

> Bob Evans argues that application of the "half-time" method is dictated by the
> common-sense proposition set forth in *Overnight Motor/Missel*, and followed by
> numerous courts and the Department of Labor, that an employee who was already
> compensated by a salary for all hours worked is only entitled to seek the additional
> "half-time" overtime premium as the appropriate measure of damages, since the
> payment of the "half-time" amount will bring the employee to "time and a half"
> compensation for overtime hours. *See Desmond*, 630 F.3d at 356-57 (relying on
> "logical implications of *Overnight Motor*" as opposed to § 778.114 to support 50%
> premium as appropriate measure of damages); *Urnikis-Negro*, 616 F.3d at 672-83
> (finding that § 778.114 is "inapplicable" in misclassification case, but employee
> whose salary was compensation for all hours worked is still only entitled to half-
> time overtime premium as measure of damages pursuant to *Overnight
> Motor/Missel*).

(ECF No. 150 at 26.).

Bob Evans relies on *Black*, where the Fifth Circuit found that, "the FWW method of
calculating overtime premiums in a misclassification case is appropriate when the employer and
the employee have agreed that the employee will be paid a fixed weekly wage to work
fluctuating hours." 732 F.3d at 498. "According to this understanding of [the] FWW and of
*Missel,* the pertinent question is not whether overtime compensation was contemplated by the
original employment agreement, but, rather, whether there was a 'clear understanding' of what
hours the flat salary payment was intended to compensate." *Costello*, 944 F. Supp. 2d at 206-09
(citing *Givens v. Will Do, Inc. Houston*, 4:10–CV–02846, 2012 WL 1597309, *7 (S.D. Tex. May
4, 2012)). Such a reading would mean that the other requirements necessary to establish a typical
FWW agreement—such as the contemporaneous payment of overtime premiums and a clear

mutual understanding as mandated by section 778.114—do not apply to overtime calculations in a misclassification case because *Missel* itself does not make those requirements explicit.

Plaintiffs assert that Bob Evans' argument is based on a misunderstanding of *Missel*. (ECF No. 156 at 3.) Plaintiffs contend that "*Missel* was not a misclassification case" and the Supreme Court does not explicitly find "that half-time is the proper method of calculation in a misclassification case." (ECF No. 156 at 5.) Plaintiffs note that "although several courts ha[ve] read *Missel* as approving the use of the FWW method in misclassification cases, a wave of recent cases have re-visited the issue and found that the method cannot be retroactively applied in a misclassification case." (ECF No. 156 at 4.) This Court agrees with the district courts that have found *Missel* does not provide authority to retroactively apply the FWW method in a misclassification case.

First, as Plaintiffs correctly note, *Missel* is not directly on point. *Missel* is not a misclassification case, and it does not expressly authorize the use of the FWW half-time method in a misclassification case. *See Wallace*, No. SACV 08-1463-JST, 2013 WL 1944458, at *7. *Missel's* "holding that parties can agree to an employee being paid a fixed rate for all hours worked if certain conditions are met, cannot logically extend to misclassification cases" because no such agreement is reached in a misclassification case. *Wallace*, No. SACV 08-1463-JST, 2013 WL 1944458, at *7 (citing *Zulewski*, 2013 WL 633402; *Blotzer*, No. CV–11–274–TUC–JGZ, 2012 WL 6086931; *Perkins*, 2011 WL 4460248; *Monahan*, 705 F.Supp.2d 1206; *Russell*, 672 F.Supp.2d 1008).

Second, this interpretation of *Missel* "would mean that an employer and an employee could mutually agree to depart from the standard, default FLSA arrangement of a forty-hour work week with time-and-a-half overtime, simply with an understanding that a salary is intended

22

to cover all hours worked and with no mention at all of overtime payment." *Wallace*, No. SACV 08-1463-JST, 2013 WL 1944458, at *7. This would involve an employee illegally waiving his entitlement to overtime payment. *See Hasan,* 896 F.Supp.2d at 150 ("[S]uch an agreement would be illegal. An employee would have to waive her statutory right to extra compensation for overtime.") (citing *Barrentine v. Arkansas–Best Freight Sys.*, 450 U.S. 728, 740 (1981)); *Blotzer*, 2012 WL 6086931 at *12 ("[E]ven if Defendant could prove that Plaintiffs and Defendant had a clear, mutual understanding that Plaintiffs would work 50 hours a week without overtime pay, such an arrangement amounts to an agreement 'not to receive their FLSA entitlement to overtime pay. This would be illegal. Employees cannot agree to waive their right to overtime pay.'") (quoting *Russell*, 672 F.Supp.2d at 1014); *Zulewski*, No. CV 11–05117–KAW, 2013 WL 633402, *5 ("If RSRs are found to be misclassified as exempt employees, the inquiry regarding whether individual RSRs consented to a FWW is improper because when employees are misclassified, they have unwittingly agreed to forego their entitlement to their overtime time—a right which cannot be legally waived.").

Third, this interpretation of *Missel* would eliminate this Court's role as the finder of fact. Under this interpretation, in every misclassification case where the employee was paid a fixed salary and hours varied, the FWW method would apply. The very nature of overtime exempt salaries would mandate this result. *Ransom*, 825 F. Supp. 2d at 806 ("The irony of this conclusion is that, having just concluded that the question is dependent on the facts and the intentions of the parties, the court reaches a conclusion seemingly divorced from the facts, as it is a result that would be mandated in almost *every* case. By definition, in a misclassification case the employee will have been 'paid a fixed weekly sum for any and all hours that she worked,' will have 'routinely worked substantial amounts of overtime,' and will have "never received any

23

premium for the overtime hours she worked. If this is all it takes to require that the FWW be used to calculate the regular rate, then the facts really don't matter.").

Lastly, and perhaps most importantly, to allow defendant employers to utilize *Missel* in such a way goes against the remedial purpose of the FLSA. *McCoy*, No. 3:13-CV-00064-SLG, 2013 WL 4510780, at *19 ("the FWW method should not be applied in a misclassification case, particularly in light of the FLSA's remedial purpose."). "[A]ssessing damages using the fluctuating workweek method provides a perverse incentive to employers to misclassify workers as exempt, and a windfall in damages to an employer who has been found liable for misclassifying employees under the FLSA." *Perkins*, 2011 WL 4460248 at *4 n. 5; *see also*, *Ransom*, 825 F.Supp.2d at 810 n. 11 ("The significance of the employee's lack of knowledge of nonexempt status cannot be overstated. The fundamental assumption underpinning the FWW is that it is fair to use it to calculate overtime pay because the employee consented to the payment scheme. But in the context of an FLSA misclassification suit when consent is inferred from the employee's conduct, that conduct will always, by definition, have been based on the false assumption that he was not entitled to overtime compensation.").

Utilizing *Missel* as authority to retroactively apply the FWW method creates a lower threshold requirement for the retroactive application of the FWW method. This produces a perverse incentive to employers. *See Blotzer*, No. CV-11-274-TUC-JGZ, 2012 WL 6086931, at *9-12 ("Application of the FWW in a misclassification case gives rise to a "perverse incentive" for employers, because the employee's hourly "regular rate" decreases with each additional hour worked. In fact, the difference between the FWW method and the traditional time and a half method can result in an employee being paid seventy-one percent less for overtime over a given year, and under the FWW method, the effective overtime hourly rate of an employee working

24

sixty-one hours or more is less than the non-overtime hourly rate of an employee who worked no more than forty hours per week."). For instance, an employer attempting to pay employees using the FWW method cannot avail itself of the 50% overtime calculation unless it meets *all* the requirements of § 778.114; but if that same employer misclassifies its employees as exempt and pays them a salary with no overtime, that employer can avail itself of the 50% overtime calculation even though it does not meet the requirements of § 778.114 (and that's assuming the misclassified employee finds out he is misclassified and files a law suit). In short, utilizing *Missel* as authority for retroactive application of the FWW method creates a loophole where employers can circumvent the requirements of § 778.114. This incentivizes employers to break the law and misclassify employees as exempt.

Even further, if *Missel* authorizes less restrictive requirements for retroactive application of the FWW method, nothing prevents the exact same application of *Missel* to authorize the use FWW method in all circumstances. Under *Missel's* requirement, employers could circumvent the contemporaneous overtime payment requirement; and employers would only have to demonstrate a clear mutual understanding of a fixed rate of pay. Applying *Missel*'s requirements across the board would invalidate sound law in this circuit that relies on the stricter requirements articulated in § 778.114. *Missel* is not a safety hatch for defendant employers looking to shield themselves from liability.

Thus, the Court declines to utilize *Missel* as authority to calculate Plaintiffs' overtime.

B.  **The Divisor and the Regular Rate of Pay Calculation**

"The Court's conclusions above do not, however, resolve a lingering, but related evidentiary issue: that even if the court applies a time-and-a-half method for determining back pay, the court must still determine what the 'regular rate of pay' actually is, per hour, in order to know what to award to the plaintiffs if they are found not exempt." *Costello*, 944 F. Supp. 2d at

25

206-09. Therefore, the Court now turns to the appropriate method for finding the regular rate of pay and calculating overtime in a misclassification case. If employees are misclassified as exempt employees, they are entitled to overtime compensation in accordance with 29 U.S.C. § 207(a) and the DOL's overtime regulations at 29 C.F.R. Part 778. According to FLSA regulations, "the Act requires the payment of overtime compensation for hours worked in excess of the applicable maximum hours standard at a rate not less than one and one-half times the regular rate. The overtime rate, like the regular rate, is a rate per hour." 29 C.F.R. § 778.308.

According to FLSA regulations, Plaintiffs' overtime compensation should be calculated as follows:

> [The FLSA] requires the payment of overtime compensation for hours worked in excess of the applicable maximum hours standard at a rate not less than one and one-half times the regular rate. The overtime rate, like the regular rate, is a rate per hour. *Where employees are paid on some basis other than an hourly rate,* the regular rate is derived, as previously explained, by dividing the total compensation (except statutory exclusions) by the total hours of work for which the payment is made.

29 C.F.R. § 778.308 (emphasis added). The regular rate of pay for a salaried employee is set forth in 29 C.F.R. § 778.113 ("§ 778.113"). The regulation provides:

> (a) Weekly salary. If the employee is employed solely on a weekly salary basis, his regular hourly rate of pay, *on which time and a half must be paid,* is computed by dividing the salary by the *number of hours which the salary is intended to compensate.*

29 C.F.R. § 778.113 (emphasis added).

In this Court, Judge Marbley recently addressed the issue of how to determine the regular rate of pay in a misclassification.[5] *Cook*, No. 2:11-CV-00691, 2013 WL 5477148, at *11. Judge

---

[5] In *Cook*, the Plaintiffs argue that, absent evidence of an agreement to a intended  number of hours, the appropriate divisor in a misclassification case should be 40. There is case law to support this contention. *See Kornbau v. Frito Lay N. Am., Inc.*, No. 4:11CV02630, 2012 WL 3778977, at *4 (N.D. Ohio Aug. 30, 2012) (finding that under the traditional time and a half method "the total wages earned in the week are divided by 40, a standard workweek, to determine the regular rate. Then, one and one-half of the regular rate is multiplied by the number of overtime hours

Marbley found that, "'in determining the 'regular rate,' the Court divides the total compensation in any given pay period 'by the total hours of work for which the payment is made,' consistent with the language of 29 C.F.R. § 778.308." *Cook*, No. 2:11-CV-00691, 2013 WL 5477148, at *11. The *Cook* Court found that "the relevant case law supports Plaintiffs' interpretation that 'total hours of work for which the payment is made' can mean the hours that Plaintiffs knew they were scheduled to work." *Cook*, No. 2:11-CV-00691, 2013 WL 5477148, at *11. Judge Marbley found that the regular rate is equal to the weekly compensation paid to the employee divided by the number of hours in the "regular work schedule of which the employee was aware and had agreed." *Cook*, 2013 U.S. Dist. LEXIS 131956, at *43 (citing *Fegley*, 19 F.3d at 1129–30; *Brennan v. Valley Towing Co.*, 515 F.2d 100, 106 (9th Cir. 1975); and *Mumbower v. Callicott*, 526 F.2d 1183, 1187 (8th Cir.1975)).

This Court is persuaded by Judge Marbley's reasoning in *Cook*. Thus, the "regular work schedule of which the employee was aware and had agreed" provides the divisor on how to calculate the regular rate of pay. "'[W]here the employee is paid solely on a weekly salary basis, the number of hours the employee's pay is *intended to compensate*—not necessarily the number of hours he actually works—is the divisor."' *Lamonica*, 711 F.3d at 1311 (quoting *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1269 (11th Cir. 2008)) (emphasis added).

Bob Evans asserts that because "there was never an 'agreement' that AMs would receive a fixed salary for a fixed number of hours per week," the regular rate should be a function of all

---

worked."); *Dingwall v. Friedman Fisher Associates,* 3 F.Supp.2d 215 (N.D.N.Y.1998) (using 40 as the divisor). Because the facts of the case *sub judice* suggest the parties understood that work would include hours scheduled over 40 (and not simply an unlimited number of hours), the Court will not address whether 40 is the appropriate divisor in misclassification cases where the expectation is to to work an unlimited number of hours.

hours actually worked. (ECF No. 150 at 2.)[6] On the other hand, Plaintiffs maintain that the rate

should be a function of the hours AMs were regularly scheduled and expected to work:

> "[w]hen the Plaintiffs accepted the Assistant Manager position with Bob Evans, the parties agreed to a schedule of 45-50 hours per week. The evidence of this agreement is twofold: first, Bob Evans' corporate documents explicitly state the 45-50 hour expectation; second, each AM deposed in this case to date testified that they understood the 45-50 hour expectation and were, in fact, regularly scheduled for 45-50 hour shifts.

(ECF No. 148 at 4.)

As shown in the background section *supra*, the parties present conflicting evidence

regarding how many hours the parties intended the salary to cover. *See Section II. Factual*

*Record*, *supra*; *see also*, *Blotzer*, No. CV-11-274-TUC-JGZ, 2012 WL 6086931, at *9-12

("Although Defendant describes the Plaintiffs' testimony regarding their salary as their 'sole

source of income regardless of whether they worked 35 or 55 hours,' neither Plaintiff testified to

any expectation of ever working less than 40 hours."). This Court agrees with Plaintiffs' position

that "[t]he question of how many hours the Plaintiffs were expected to work, agreed to work, and

were regularly scheduled to work, constitute issues of fact that areappropriately left to the jury to

decide." (ECF No. 148 at 3.) District Courts throughout this circuit have found that the regular

---

[6] Bob Evans suggests that determining the rate of pay in any manner other all hours worked prevents this case from continuing as a collective action. (ECF No. 150.) This Court disagrees. Plaintiffs can establish the regular rate and the hours through representative testimony. Relying on *Mt. Clemens Pottery*, 32 U.S. 680 (1946) courts, including the Sixth Circuit, have uniformly held that damages in FLSA overtime cases can be proved with testimony from a representative group of plaintiffs. *See e.g., Dept. of Labor v. Cole Enter., Inc.,* 62 F.3d 775, 781 (6th Cir. 1995) (citing *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58 (2nd Cir. 1997); *Reich v. S. Md. Hosp., Inc.,* 43 F.3d 949, 951 (4th Cir. 1995); *Martin v. Tony and Susan Alamo Found.*, 952 F.2d 1050, 1052 (8th Cir. 1992); *Martin v. Selker Bros., Inc.,* 949 F.2d 1286, 1297 (3d Cir. 1991); *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 792 (1st Cir. 1991); *McLaughlin v. Ho Fat Seto*, 850 F.2d 586, 589 (9th Cir. 1988); *Brock v. Norman's Country Mkt., Inc.,* 835 F.2d 823, 828 (11th Cir. 1988); *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1331 (5th Cir. 1985)). "[I]t is possible that representative testimony from a subset of plaintiffs could be used to facilitate the presentation of proof of FLSA violations, when such proof would ordinarily be individualized." *O'Brien v. Ed Donnelly Enterprises, Inc.,* 575 F.3d 567, 585 (6th Cir. 2009) *(citing Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1263–65, 1279–80 (11th Cir. 2008) (as amended)). The Sixth Circuit explained that "[t]he testimony of fairly representative employees may be the basis for an award of back wages to nontestifying employees." *Cole Enterprises, Inc.*, 62 F.3d at 781.

rate of pay is a question of fact that should be left to the jury (even if some of the courts do not outright reject the use of the FWW method as a matter of law). *See Clark v. Shop24 Global, LLC*, No. 2:12-CV-802, 2015 WL 235201, at \*16 (S.D. Ohio Jan. 16, 2015) ("The record concerning the parties' course of conduct demonstrates that the Plaintiff worked fluctuating hours. However, there is a genuine issue of material fact as to whether the parties' agreed that a fixed weekly wage alone would compensate the Plaintiff for those fluctuating hours."); *Cook*, No. 2:11-CV-00691, 2013 WL 5477148, at \*11 ("there is a dispute of material fact as to the number of hours per week Plaintiffs were aware they would be working."); *Thomas v. Doan Const. Co.*, No. 13-11853, 2014 WL 1405222, at \*12-13 (E.D. Mich. Apr. 11, 2014) (finding Plaintiff's statement, "I was classified as salary and so my understanding was that I get paid a specific salary[,]" not sufficient to support a conclusion that salary covered all hours worked); *see also, Hasan*, 896 F.Supp.2d at 151 n. 5 ("In its brief, GPM argues that even if the Court were to reject the use of the fluctuating work week in this case, the Court should determine the plaintiffs' regular rate by dividing their salaries by 52 hours, not 40. Defendant points to the plaintiffs' job description as evidence to support its claim—the description clearly states that store managers should expect to work a minimum of 52 hours per week. The court takes no position this time regarding the proper denominator for calculating a plaintiffs' damage award.").

On the record of the present action, the Court finds that there is a dispute of material fact as to the regular work schedule of which the Plaintiffs were aware and had agreed to work. *See Fegley*, 19 F.3d at 1129–30 (divisor is the number of hours per week plaintiff was *aware* he would be working) (emphasis added). "This number, to be determined by a factfinder, will serve as the divisor for the purposes of determining the Plaintiffs' 'regular rate.'" *Cook*, No. 2:11-CV-00691, 2013 WL 5477148, at \*11. Thus, it is for the jury to determine the number of hours

Plaintiffs' salary was intended to compensate, which will then be used to calculate the regular rate of pay. Plaintiffs' overtime compensation for hours worked in access of forty hours per week is one and one-half times that regular rate. 29 C.F.R. § 778.308.

**V.**    **Conclusion**

For the reasons discussed above, the Court hereby **GRANTS** Plaintiffs' Motion for Partial Summary Judgment (ECF No.148) and **DENIES** Bob Evans Motion for Partial Summary Judgment (ECF No. 150).

**IT IS SO ORDERED.**

**UNITED STATES DISTRICT JUDGE**